## Derrenges's Estate.

*Wills — Probate — Issue devisavit vel non — Testamentary capacity — Paralysis.*

1. One who is suffering from paralysis is not necessarily weakened in intellect to the extent that he cannot dispose of his property by will.

2. If there is no testimony to show that the intellect of a paralytic was destroyed, or that she did not understand the contents of a will when it was read to her, an issue *devisavit vel non* will not be granted.

Appeal from Register of Wills.   O. C. Schuylkill Co.

A. D. Knittle, for proponent;   N. C. Watkins, for contestant.

WILHELM, P. J., June 5, 1922.—This is an appeal from the Register of Wills upon the probate of a paper purporting to be the last will and testament of Katie Derrenges, dated Feb. 17, 1920.

The appellant alleges that, at the time of the execution of the will, Katie Derrenges was not of sound and disposing mind, memory and understanding, and the execution of the will was procured by undue influence.

The appellant has failed to present any testimony which shows that Katie Derrenges was of unsound mind at, before or after the making of the will, except testimony proving that about two weeks before the execution of the will, Katie Derrenges suffered from a stroke of paralysis, which prevented her from using the organs of speech, and that she never fully recovered from the effects of the stroke of paralysis, and her death followed on Nov. 20, 1920, about nine or ten months after the time of her affliction.

No witness testified that the paralytic stroke affected the mind of Katie Derrenges to the extent that she was not conscious and did not understand what was taking place within the scope of her vision. All of the testimony seems to indicate that testatrix showed by her eyes that she knew what was transpiring in her presence, and that she understood what was said to her, and manifested her understanding by motions of the head or hand.

The estate of the testatrix amounted to about $800, and she was survived by three daughters, one of whom is confined in a lunatic asylum, another is the contestant here, and the youngest daughter is the proponent of the will, to whom the largest portion of the estate had been given.

It appears the testatrix lived in her own home with the contestant for one or two years, and about two weeks before she suffered the paralytic stroke the testatrix and the contestant quarreled, and the contestant removed from the home of the testatrix; thereupon the proponent moved into the house of the testatrix to take care of her mother—was there at the time of the affliction and remained with her to the date of the death.

The scrivener who wrote the will came to the house for that purpose at the suggestion of the other subscribing witness, who was told by the proponent that her mother desired to make a will. The only persons present were the scrivener, the witness and the proponent. The proponent informed the scrivener of the disposition her mother wanted to make of her property. When it came to the benefaction to the contestant, the proponent suggested the sum of $300. The testatrix dissented and indicated quite clearly that the bequest to the contestant should be $200. The scrivener testified that the testatrix could not talk understandingly to him, and he could not understand the attempted conversation between the proponent and the testatrix, except the discussion as to the bequest to the contestant, and that he wrote the will as the proponent suggested. But that, after the will was written, it was read to the testatrix by paragraphs, and, after the reading of each paragraph, he

inquired of the testatrix if the language expressed her desires, and in each instance the testatrix indicated her approval. The testimony of the other subscribing witness is to the same effect.

Every one is presumed to be of sound and disposing mind, memory and understanding; and he who asserts the contrary as to any individual must prove it. One who is suffering from paralysis is not necessarily weakened in intellect to the extent that he cannot dispose of his property by last will and testament. There is no testimony here to show that the intellect of this testatrix was destroyed or that she did not understand the contents of the will. Therefore, there is no question of fact to be submitted to a jury concerning the mental capacity of the testatrix. And there is not any evidence supporting undue influence. The appeal is dismissed.

From M. M. Burke, Shenandoah, Pa.